# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# PECOS DIVISION

| | |
|---|---|
| KENNETH CRAIN, Individually and on Behalf of Others Similarly Situated,<br><br>v.<br><br>BERGAILA & ASSOCIATES, INC. | Case No.: _____<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Kenneth Crain (Crain) brings this lawsuit to recover unpaid overtime wages and other damages from Bergaila & Associates, Inc. (Bergaila) under the Fair Labor Standards Act (FLSA). 29 U.S.C. § 201 *et seq*.

2. Crain worked for Bergaila as an Inspector.

3. Crain and the Day Rate Inspectors (defined below) regularly worked more than 40 hours a week.

4. But Bergaila did not pay them overtime.

5. Instead of paying overtime as required by the FLSA, Bergaila paid its Inspectors a flat amount for each day worked (a "day rate") without overtime compensation.

6. Bergaila misclassified Crain and the other Day Rate Inspectors as exempt from the overtime requirements under the FLSA.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

8. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under a federal statute. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

10. Crain worked for Bergaila in this District and Division.

11. Specifically, Crain worked for Bergailia in and around Kermit, Texas, which is in this District and Division. Indeed, Crain regularly worked overtime for Bergaila in and around Kermit, Texas. Despite regularly working over 40 hours, Bergaila paid him a day rate with no overtime for the work he did for Bergaila in and around Kermit, Texas.

12. Bergaila conducts substantial business operations in this District and Division.

## PARTIES

13. Crain worked for Bergaila as an Inspector from approximately June 2018 until November 2018.

14. Throughout his employment, Bergaila paid Crain a flat daily rate for each day worked regardless of the total hours worked in a work week ("day rate pay plan").

15. Crain's consent to be a party plaintiff is attached as Exhibit 1.

16. Crain brings a FLSA collective action on behalf of himself and all other Bergaila's Day Rate Inspectors who were paid according to Bergaila's day rate pay plan.

17. Bergaila paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek.

18. The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All Inspectors Bergaila paid according to its day rate pay plan at any time in the last 3 years (the "Day Rate Inspectors").**

19. The Day Rate Inspectors can be readily ascertained from Bergaila's records.

20. Bergaila may be served with process by serving its registered agent: **Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701**.

### FLSA COVERAGE

21. At all relevant times, Bergaila has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22. At all relevant times, Bergaila has been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

23. At all relevant times, Bergaila has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

24. At all relevant times, Bergaila has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

25. In each of the past 3 years, Bergaila's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

26. At all relevant times, Crain and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

27. Bergaila uniformly applied its policy of paying its Inspectors, including Crain, a day rate with no overtime compensation.

28. Bergaila applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

29. By paying its Inspectors a day rate with no overtime compensation, Bergaila violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

30. As a result of Bergalia's day rate pay plan, Crain and the Day Rate Inspectors do not receive overtime as required by the FLSA.

31. Bergaila's day rate pay plan is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

32. Bergaila bills itself as "a recognized leader in recruiting engineering and technical design talent, … connect[ing] world-renown oil and gas, engineering and construction, and oil field service companies nationwide with talented professionals."[1]

33. To complete its business objectives, Bergaila hires personnel, such as Crain, to perform inspection services for certain oil and gas companies.

34. Many of these individuals worked for Bargaila on a day rate basis (without overtime pay).

35. These workers make up the proposed collective of Day Rate Inspectors.

36. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

37. For example, Crain worked for Bergaila as a QC Inspector from approximately June 2018 until November 2018 in and around Kermit, Texas.

38. Throughout his employment with Bergaila, Bergaila paid him on a day rate basis.

39. Crain and the Day Rate Inspectors work for Bergaila under its day rate pay scheme.

---

[1] http://bergaila.com/ (last visited February 3, 2020).

40. Crain and the Day Rate Inspectors do not receive a salary in accordance with the FLSA.

41. If Crain and the Day Rate Inspectors did not work, they did not get paid.

42. Crain and the Day Rate Inspectors do not receive overtime pay.

43. This is despite the fact Crain and the Day Rate Inspectors often worker 10 or more hours a day, for 7 days a week, for weeks at a time.

44. Although he typically worked 7 days a week, for 10 or more hours a day, he did not receive any overtime pay.

45. Crain and the Day Rate Inspectors received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

46. Crain's work schedule is typical of the Day Rate Inspectors.

47. Bergaila knows Crain and the Day Rate Inspectors work for 10 or more hours a day, for 7 days a week.

48. Bergaila's records reflect the fact that Crain and the Day Rate Inspectors regularly work far in excess of 40 hours in certain workweeks.

49. Bergaila does not pay Crain or the Day Rate Inspectors overtime for hours worked in excess of 40 in any of those weeks.

50. Instead, Bergaila pays Crain and the Day Rate Inspectors on a day rate basis.

51. Crain and the Day Rate Inspectors are not employed on a salary basis.

52. Crain and the Day Rate Inspectors do not, and have never, received guaranteed weekly compensation from Bergaila irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

53. Bergaila's policy of paying Crain and the Day Rate Inspectors a day rate with no overtime compensation violates the FLSA because it deprives Crain and the Day Rate Inspectors of overtime for the hours they work in excess of 40 hours in a single workweek.

54. Bergaila knew Crain and the Day Rate Inspectors worked more than 40 hours in a week.

55. Bergaila and/or its clients control Crain and the Day Rate Inspectors' work.

56. Bergaila requires Crain and the Day Rate Inspectors to follow Bergaila and/or its clients' policies and procedures.

57. Crain and the Day Rate Inspectors' work must adhere to the quality standards put in place by Bergaila and/or its clients.

58. Crain and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

59. As an Inspector, Crain was responsible for ensuring Bergaila's and/or its clients' projects were completed according to established guidelines, specifications, and restrictions.

60. As a result, Day Rate Inspectors do not exercise independent judgment or discretion as to matters of significance.

61. All Bergaila's Day Rate Inspectors perform similar duties, inspecting projects, ensuring work is done according to established guidelines, specifications, and restrictions.

62. Crain and the Day Rate Inspectors provide inspection reports to Bergaila (and/or its clients') personnel.

63. At all relevant times, Bergaila and/or its clients maintained control over Crain and the Day Rate Inspectors via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

64. Crain and the Day Rate Inspectors do not have the power to hire or fire any employees.

65. Crain's working relationship with Bergaila is similar Bergalia's relationship with its other Day Rate Inspectors.

66. Day Rate Inspectors do not supervise 2 or more employees of Bergaila for more than 80 hours in a week.

67. Day Rate Inspectors perform manual labor.

68. Day Rate Inspectors primary duty is inspecting oil and gas related equipment and projects in the oilfield. This requires the use of their hands, requires them to wear personal protective equipment, and is physically exhausting.

69. Day Rate Inspectors do not manage general business operations of Bergalia or its clients.

70. Bergaila knew, or showed reckless disregard for whether, the Day Rate Inspectors were entitled to overtime under the FLSA.

71. Nonetheless, Bergaila failed to pay Crain and the Day Rate Inspectors overtime.

72. Bergaila willfully violated the FLSA.

## CAUSE OF ACTION
## FLSA VIOLATION

73. Bergaila's day rate pay plan violates the FLSA because Crain and the other Day Rate Inspectors did not receive overtime pay for hours they worked in excess of 40 in a week.

74. Bergaila knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

75. Bergaila's failure to pay overtime compensation to the Day Rate Inspectors was not based on any reasonable interpretation of the law.

76. Nor was Bergaila's decision not to pay its Day Rate Inspectors overtime made in good faith.

77. Accordingly, Crain and the Day Rate Inspectors are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorneys' fees, and costs.

## COLLECTIVE ACTION ALLEGATIONS

78. Crain brings this claim as a collective action under the FLSA.

79. The Day Rate Inspectors were victimized by Bergaila's day rate pay plan which is in willful violation of the FLSA.

80. Other Day Rate Inspectors worked with Crain and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

81. Based on his experiences with Bergaila, Crain is aware that Bergaila's illegal practices were imposed on the Day Rate Inspectors.

82. The Day Rate Inspectors are similarly situated in all relevant respects.

83. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

84. The illegal day rate pay plan Bergaila imposed on Crain was imposed on all Day Rate Inspectors.

85. Like Crain, the other Day Rate Inspectors are denied overtime when they work more than 40 hours per week.

86. The overtime owed to Crain and the Day Rate Inspectors will be calculated using the same records and the same formula.

87. Crain's experiences are therefore typical of the experiences of the Day Rate Inspectors.

88. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

89. Crain has no interests contrary to, or in conflict with, the Day Rate Inspectors that would prevent class or collective treatment.

90. Like all Day Rate Inspectors, Crain has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

91. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

92. Absent a collective action, many Day Rate Inspectors will not obtain redress of their injuries, and Bergaila will reap the unjust benefits of violating the FLSA.

93. Further, even if some of the Day Rate Inspectors could afford individual litigation against Bergaila, it would be unduly burdensome to the judicial system.

94. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate Inspectors, as well as provide judicial consistency.

95. The questions of law and fact that are common to each Day Rate Inspector predominate over any questions affecting solely the individual members.

96. Among the common questions of law and fact are:
    a. Whether Bergaila's decision to pay a day rate with no overtime compensation to these workers was made in good faith;
    b. Whether Bergaila's violation of the FLSA was willful; and
    c. Whether Bergaila's illegal pay practice applied to the Day Rate Inspectors.

97. Crain and the Day Rate Inspectors sustained damages arising out of Bergaila's illegal and uniform employment policy.

98. Crain knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

99. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Bergaila's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

100. Consistent with Bergaila's illegal day rate policy, Crain and the Day Rate Inspectors were not paid overtime when they worked more than 40 hours in a workweek.

101. As part of their regular business practices, Bergaila intentionally, willfully, and repeatedly applied its day rate pay plan to Crain and the Day Rate Inspectors.

102. Bergaila's illegal day rate pay plan deprived Crain and the Day Rate Inspectors of the premium overtime wages they are owed under federal law.

103. Bergaila is aware, or should have been aware, that the FLSA required it to pay Crain and the Day Rate Inspectors overtime premiums for hours worked in excess of 40 in a workweek.

104. There are many similarly situated Day Rate Inspectors who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

105. The other Day Rate Inspectors are known to Bergaila, are readily identifiable, and can be located through Bergaila's records.

### JURY DEMAND

Crain demands a trial by jury.

### RELIEF SOUGHT

Wherefore, Crain prays for:

(a) an order allowing Crain's FLSA claims to proceed as a collective action and directing notice to the other Day Rate Inspectors;

(b) judgment finding Bergaila in violation of the FLSA;

(c) judgment finding Bergaila liable to Crain and the Day Rate Inspectors for unpaid overtime, and an equal amount of liquidated damages;

(d) judgment awarding Crain and the Day Rate Inspectors reasonable attorneys' fees and costs of this action;

(e) judgment awarding Crain and the Day Rate Inspectors pre- and post-judgment interest at the highest rates allowed by law; and

(f) such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Andrew W. Dunlap*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    Federal ID No. 27157
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    Federal ID No. 1093163
    **Taylor A. Jones**
    Texas Bar No. 24107823
    Federal ID No. 3348814
    **Lindsay R. Itkin**
    Texas Bar No. 24068647
    Federal ID No. 1458866
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    tjones@mybackwages.com
    litkin@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    Federal ID No. 21615
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**